## S. Ellison Sawyer, Petitioner,

### *vs.*

## The County Commissioners of Androscoggin County.

## Androscoggin.   Opinion November 14, 1917.

*Writ of mandamus.   General rule as to when same may be granted.   Rights and duties of Sheriffs.   Powers and duties of County Commissioners.*

Mandamus to compel the county commissioners of [Androscoggin to "fix the pay" of the petitioner for services as jail physician.

The case is reported and presents the following question: First, can mandamus be properly invoked upon the allegations in the petition and admitted by the return. Second, Who, if either, has the legal right to employ a physician to render medical attendance to sick prisoners confined in jail, the county commissioners, or the sheriff. Third, To determine the case upon legal principles.

*Held:*

(1)   That the various statutes relating to the subject all point the same way and are consistent with the expressed intention of the legislature, that the sheriff or his deputy, as jailer, shall have absolute and exclusive custody and charge of all prisoners confined in the jail.

(2)   That these provisions impose so great a responsibility upon the sheriff or jailer for the safe keeping of all prisoners that their interpretation is inconsistent with any other theory than that which vests in the sheriff complete control of the key that unlocks the door that stands between the confinement of prisoners and access to escape.

(3)   That nowhere is found any authority, express or implied, conferred upon the county commissioners, in conflict with the authority vested by the statutes, in the sheriff or his deputy, as jailer.

(4)   That the interpretation of the statutes herein reviewed by express language, not only give, but impose upon, the sheriff or his deputy, as jailer, the sole responsibility for the care, custody and safe keeping of the prisoners; and by necessary implication, authorize him, alone, when necessary, to employ a physician to administer to the prisoners.

Petition for mandamus.   Defendants filed answer and, by agreement of parties, cause was reported to Law Court upon certain agreements and stipulations.   Judgment in accordance with opinion.

Case stated in opinion.

*Garcelon & Adams, and George C. Webber,* for petitioner.

*William H. Hines,* County Attorney, for respondents.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, MADIGAN, JJ.

SPEAR, J. Mandamus to compel the County Commissioners of Androscoggin to "fix the pay" of the petitioner for services as jail physician.

The case is reported and presents the following questions: First, Can mandamus be properly invoked upon the allegations in the petition and admitted by the return? Second, Who, if either, has the legal right to employ a physician to render medical attendance to sick prisoners confined in jail, the County Commissioners, or the Sheriff? Third, To determine the case upon legal principles.

The solution of these questions depends upon the construction of the statutes relating to the respective duties and powers of the sheriff and county commissioners.

At the outset it may be said that there is no statute conferring express authority either upon the sheriff or county commissioners to employ a "physician authorized to attend the sick" as expressed in R. S., 1916, Chap. 85, Sec. 47, or "the physician appointed to attend said prisoner" as said in R. S., Chap. 127, Sec. 26. Yet these expressions and the necessity of such action, necessarily imply the duty and power of some authority, having the control and custody of prisoners, who are helpless in their own right, to employ a physician to administer to the welfare of the prisoners in a county jail at the expense of the county. This authority once implied from the statutes, is as positive as if expressed in the statutes.

Before discussing the question of implied authority it may be well to first determine whether, if the implied power is found in the sheriff to employ a physician to treat the prisoners, he is entitled under the facts of this case to the remedy of mandamus. By the process of elimination this question may be determined. R. S., Chap. 85, Sec. 27, provides that for all subordinate assistants and employees of the jailer the county commissioners shall fix their pay. They therefore cannot bring suit against the county until the pay is fixed. *Huse* v. *Cumberland County,* 29 Maine, 467. (1) The commissioners,

while they have refused to pay the bill presented by the physician in the case at bar, have not fixed his pay. Hence he cannot bring an action of assumpsit on an implied contract or quantum meruit. (2) He is not a public officer. He is an employee. His employment is conceded. The legality of his employment only is in question. Hence quo warranto does not lie. (3) The county commissioners have not acted, according to the statute, upon his bill. They have rejected it, not "fixed his pay" as something or nothing. Hence certiorari will not lie.

It quite clearly appears that no remedy lies except upon petition for mandamus. In *Dennett* v. *Manufacturing Company,* 106 Maine, 478 the use of mandamus is defined as follows: "From the authorities the general rule is deducible, we think, that mandamus will not be used except to compel the performance of some duty clearly imposed by law and in respect to the performance of which no discretion may be exercised, and in behalf of one whose right to its performance is legally established and unquestioned, and where there is no other sufficient and adequate remedy." Under this definition the petitioner must show that he was legally employed and had a legal claim against the county upon which it was the duty of the county commissioners to fix the amount to be paid. The legality of his bill depends upon the legality of his employment. When the latter question is determined the former will be taken care of. We have already concluded that power must be implied from the statutes to authorize somebody, either the sheriff, or the county commissioners, to employ a physician for sick prisoners for which he will be entitled to a reasonable compensation. Who shall it be? It depends upon the construction of the statutes, considered in pari materia. Ordinarily the interpretation of a statute depends upon the intent of the legislature as gleaned from certain words in a section. But here it depends upon the intent as gleaned from certain sections in different chapters, as the intent is to be determined by implication. Accordingly, in their bearing upon a proper interpretation, the situation and the circumstances connected with the service to be performed become of unusual importance. The situation presents a county containing a jail erected and supported for the confinement and detention of the prisoners who may be committed to it. These prisoners are in the custody of the law and helpless. They can neither confer nor communicate with the outside public except through the medium of some official agency.

Their health, as an infliction upon themselves, or as a menace to the other prisoners, as in the case of an infectious or loathsome disease, depends upon official attention. These are not theoretical, but actual, conditions. These circumstances demonstrate the necessity of lodging authority in some agency that can act quickly and efficiently in the employment of medical aid.

In view of the official functions of the sheriff, as jailer, and of the county commissioners as financial officers of the county, which agency is the better adapted to meet the requirements of this situation?

The office of sheriff is one of the oldest known to the common law. It is inseparably associated with the county. He is the chief executive officer of the state in his county. The office of sheriff is recognized in the earliest annals of English law. It is much older than Magna Charta. Under all systems of government which have recognized the law as the supreme rule of action it has been found absolutely necessary to vest in some one person the ultimate power to preserve the peace and quell disorder and suppress riots, and this person is the sheriff. His power is largely a discretionary one. See Words and Phrases, title, "Sheriff." In this state the sheriff is a constitutional officer. By the common law and the statute law he is made responsible as a conservator of the peace and a protection to society against the commission of vice and crime. He is obliged to give a bond in the sum of $25,000 conditioned for the faithful performance of the duties of his office and to answer for all neglects and misdoings of his deputies.

The board of county commissioners are political officials whose primary duties are to act as financial agents of the county. R. S., 1916, Chap. 83, Sec. 10 under the caption "Duties of County Commissioners" provides as follows: "The county commissioners shall make the county estimates and cause the taxes to be assessed; examine, allow and settle accounts of the receipts and expenditures of moneys of the county; represent it; have the care of its property and management of its business; by an order recorded, appoint an agent to convey its real estate; lay out, alter or discontinue ways, and perform all other duties required by law." Under this general provision and other provisions of the statute it is the duty of the commissioners to provide and keep in repair jails as provided in the statute, to provide workshops for prisoners, to provide servitude

employment for prisoners, and may authorize the keepers of jails to keep able bodied male prisoners to work on the building or repairing of highways. This last provision is significant. The commissioners are not permitted to set the prisoners at work, themselves. They can only authorize the keeper of the jail to do this.

Nowhere in the statute are the commissioners vested with the powers of jailer or given control or custody of prisoners while confined in jail. No responsibility by bond or penalty is placed upon them for the care, custody or condition of the prisoners. Nor are they required to be present at all at the jail to look after the prisoners or to delegate any agent to represent them in this regard.

Accordingly, from the standpoint of adaptability the sheriff as jailer is the only officer who, by himself or keeper, is always present at the jail ready to act in any emergency.

Thus the situation and circumstances, in view of the general duties, respectively, of the sheriff and county commissioners, would strongly suggest that the sheriff is the official, intended to be made responsible for and vested with the authority to employ every person whose employment requires him to have access to the cells of the prisoners.

But in addition to this general rule of construction the various sections found in different chapters of the statute all point directly to the sheriff as the official, whose authority and control are intended to extend exclusively to the care and custody of the prisoners while they are within the confines of the jail. These statutes are all consistent with the exercise of such power and control and inconsistent with any other hypothesis.

Sec. 27 of Chap. 85 in express terms confers such dominion over the jail and the prisoners: "The sheriff has the custody and charge of the jail in his county, and of all prisoners therein, and shall keep it himself, or by his deputy, as jailer, master or keeper, for whom he is responsible." This language is definite, unambiguous and clear. The sheriff has (1) the custody and charge of the jail; (2) of all prisoners therein; (3) shall keep it himself; (4) or by his deputy as jailer, master or keeper; (5) for whom he is responsible.

Nowhere are these five direct and positive functions of the sheriff modified by express statute or necessary implication or conflict of authority.

The next sentence reads: "The jailer, master or keeper shall appoint all subordinate assistants and employees for whom he is

responsible." Construed in the light of the previous sentence, defining the powers of the sheriff, this language is equally unambiguous and clear, and, when viewed in the light of the situation, its interpretation would seem to be unquestionable. The duties imposed by the sheriff by the first sentence in this section, if he perform those duties, make it absolutely necessary that he should have the appointment of every person, no matter what his employment, lawyer, doctor or minister,—who shall be permitted to enter the jail and come in personal contact with the prisoners. If the county commissioners can employ a jail physician, such right of employment necessarily implies the further right of admitting him to the jail, to the cells and to personal contact with the prisoners. The exercise of such authority is in utter conflict with the responsibility which is placed upon the sheriff by this section. The security of the prisoners against escape is jeopardized. It establishes a divided authority over the prisoners and takes away from the sheriff the powers and duties, the exclusive exercise of which, only, are commensurate with his responsibility. Without express statute conferring such authority, in view of the sheriff's duties, we think it cannot be supplied by implication.

We might rest here but several other sections of the statute are pertinent to the interpretation already given. These sections all tend to show that it was the purpose of the legislature to make the sheriff or his deputy, as jailer, responsible in every way for the care, control and safe keeping of prisoners within his custody. Section 30 provides that the sheriff shall keep the jail clean and healthy and pay strict attention to the personal cleanliness of the prisoners at the expense of the country. Section 31 is emphatic in its bearing upon the intent of the legislature in placing the responsibility on the jailer: "Every keeper of a jail shall reside constantly with his family, if he has any, in the house provided for him, if, in the opinion of the county commissioners it is good and sufficient, and if he neglects to do so he forfeits not exceeding $300." The purpose of this section is obvious. Section 32 provides that the jailer at the expense of the county shall furnish a copy of the bible to the prisoners who can read. Section 36 has been quoted by the respondents as tending to show the authority of the commissioners to employ a physician. The sentence which is pertinent reads as follows: "Whenever a convict at the expiration of his sentence is sick and unable to be removed from jail he shall be cared for by the jailer at the expense of the county until the county

commissioners deem it safe for him to be removed." It is claimed that the right of the commissioners to say when it is safe for a prisoner to be removed shows implied authority in the commissioners over the prisoners. But it will be noted that even after the expiration of the sentence a sick prisoner continues in the care of the jailer. The reason for this is obvious and in perfect harmony with the theory that the legislature did not intend that the jail should be invaded by any person not admitted by the jailer.

Section 37 provides that the sheriff or his jailer at the expense of the county may give a prisoner about to be discharged a sum of money not exceeding two dollars and wearing apparel, etc. These sums to be repaid to him by the county. Section 30 provides that the sheriff shall keep a record of the prisoners committed, a description of the prisoners, etc., when they are discharged and time and manner of any prisoner's escape.

Section 39 provides that the jailer shall return a list of prisoners at each criminal session of the court. Section 41 makes the sheriff answerable for delivery of prisoners to his successor. Section 43 makes the sheriff liable for the escape of prisoners if in jail for debt and prescribes the penalty. Section 44 is significant in its bearing upon the interpretation here given and relates to the escape of prisoners through insufficiency of the jail and provides that the county treasurer shall pay to the sheriff the amount paid by him on account of the escape. This section shows that the functions of the sheriff and county commissioners, regarding the condition of the jail and the custody of the prisoners, are entirely distinct.

Section 48 provides that if any keeper suffers a prisoner charged with an offense to escape he shall be fined according to the nature of the offense charged. The county commissioners are not here mentioned or charged with any responsibility for the escape of a prisoner. It would, accordingly, be an anomaly to hold that the county commissioners could authorize a physician to enter the jail who, if so minded, could aid a prisoner in his escape, and thus impose upon the sheriff or keeper a penalty for which he was not responsible and which, under the interpretation claimed, he might be unable to prevent. Finally, section 50 extends the authority of the keeper of the jail to the dead body of the prisoner. He is authorized to dispose of it.

As before suggested, these various statutes all point the same way and are consistent with the expressed intention of the legislature, that

the sheriff or his deputy, as jailer, shall have absolute and exclusive custody and charge of all prisoners confined in the jail. These provisions impose so great a responsibility upon the sheriff or jailer, for the safe keeping of all prisoners, that their interpretation is inconsistent with any other theory than that which vests in the sheriff complete control of the key that unlocks the door that stands between the confinement of the prisoners and access to escape. Nowhere is found any authority, express or implied, conferred upon the county commissioners, in conflict with the authority vested by the statutes, in the sheriff, or his deputy, as jailer.

We are therefore of the opinion that an interpretation of the statute, herein reviewed, by express language, not only gives, but imposes upon, the sheriff or his deputy, as jailer, the sole responsibility for the care, custody and safeguarding of the prisoners; and, by necessary implication, authorize him, alone, when necessary to employ a physician to administer to the prisoners.

*Peremptory writ to issue with costs.*