[No. H003922. Sixth Dist. Sept. 16, 1988.]

TOM BECK et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

ROBERT WINTER, as Sheriff, etc., Petitioner, v.
COUNTY OF SANTA CLARA et al., Respondents;
TOM BECK et al., Real Parties in Interest.

**COUNSEL**

Christopher D. Burdick, William H. Sortor, Ronald E. Yank, Michael L. Rains, David P. Clisham and Carroll, Burdick & McDonough for Plaintiffs and Appellants and Real Parties in Interest.

Stephen H. Silver and Silver, Kreisler, Goldwasser & Shaeffer as Amici Curiae on behalf of Plaintiffs, Cross-defendants and Appellants.

Robert J. Logan for Plaintiff and Appellant and Petitioner.

John P. O'Brien as Amicus Curiae on behalf of Appellant Winter.

Donald L. Clark, County Counsel, Steve Woodside, Assistant County Counsel, Robert A. Weers and James Rumble, Deputy County Counsel, Richard S. Whitmore, Richard C. Bolanos, Monna P. Radulovich, Whitmore, Kay & Stevens, Joseph Remcho, Kathleen J. Purcell, Julie M. Randolph, Remcho, Johansen & Purcell for Defendants and Respondents.

Dwight L. Herr, County Counsel (Santa Cruz), Thomas F. Casey III, County Counsel (San Mateo), Robert Westmeyer, County Counsel (Napa), Michael D. Ott, County Counsel (Madera), Max E. Robinson, County Counsel (Fresno), Alan K. Marks, County Counsel (San Bernardino), David E. Whittington, County Counsel (El Dorado), William J. Murphy, County Counsel (Colusa), Denis A. Eymil, County Counsel (Kings), James

A. Curtis, County Counsel (Nevada), and Susan Roff, County Counsel (Butte) as Amici Curiae on behalf of Respondents.

## OPINION

AGLIANO, P. J.—By resolutions the Board of Supervisors of Santa Clara County created a new County Department of Detention (DOD), to be headed by a board-appointed county official, and transferred to it the management of county jail facilities formerly under the jurisdiction of the sheriff, Robert Winter. Winter, the Deputy Sheriff's Association of Santa Clara County (DSA), and DSA president Tom Beck (also a county resident, taxpayer, and sheriff's sergeant) sued for a declaration that the resolutions were invalid and for an injunction against their implementation. The superior court gave judgment for the defendant county. Winter, the DSA, and Beck appealed. We issued a stay pending appeal; Winter subsequently petitioned this court for a writ of mandate to enforce the stay, alleging the county had violated the stay order. We consolidated the appeal and the writ petition. We conclude that the judgment must be affirmed and, accordingly, that the writ petition is moot.

The transfer of authority over the jail to the new county department is authorized by a statute, Government Code section 23013.[1] A central issue is the constitutional validity of that statute.

Among the challenges to the county's creation of the department of detention was the contention that the county violated state constitutional provisions by effecting the transfer of authority by urgency measure and thus denying a referendum. That argument has become moot, however, because after the judgment for county had been appealed and we had temporarily stayed implemenation of the measure, county submitted the issue to the voters and allowed Beck to do likewise. Competing measures "A" and "F" appeared on the ballot in the June 1988 primary election, and Santa Clara County voters affirmed the county's proposition, measure "A," while defeating the Sheriff's measure "F." Measure "A" accomplishes the

---

[1] The statute, Government Code section 23013, enacted in 1957, in pertinent part provides: "The board of supervisors of any county may, by resolution, establish a department of corrections, to be headed by an officer appointed by the board, which shall have jurisdiction over all county functions, personnel, and facilities, or so many as the board names in its resolution, relating to institutional punishment, care, treatment, and rehabilitation of prisoners, including, but not limited to, the county jail and industrial farms and road camps, their functions and personnel. [¶] The boards of supervisors of two or more counties may, by agreement and the enactment of ordinances in conformity thereto, establish a joint department of corrections . . . ."

originally intended transfer of authority over the county jail by county charter amendment. Beck's contention that county had a legal duty to submit the matter to the voters is therefore moot.

While the central issue in this case is the constitutionality of Government Code section 23013, additional contentions include the following: (1) DSA claims that even if the transfer of authority over the jail is otherwise valid, the proposed transfer of deputy sheriffs to new positions as employees of DOD infringes certain of their employment rights and casts doubt whether such transferred officers will retain their "peace officer" status which entitles them to carry firearms. (See Pen. Code, § 830 et seq.). (2) A further issue is whether the transfer of authority, if otherwise valid, applies to both sentenced and unsentenced prisoners. (3) Finally, we must decide Winter's petition for writ of mandate claiming that county has violated our temporary stay of the transfer of authority over the jail which was intended to preserve the status quo pending appeal.

We have decided, for reasons to be stated, that the transfer of authority over the county jail to the DOD is valid and that no further stay is needed. We have also decided to deny the petition for writ of mandate for these reasons: (1) the dissolution of the stay eliminates the need to reconcile two concurrent authorities over the jail; (2) Beck sought no contempt citation for the alleged violation of our stay, hence no sanctions issues are before us; and (3) the record shows that questions of interim jail administration should have been raised in the tribunal presently presiding over the jail conditions litigation. (Branson et al. v. Winter et al., Santa Clara County Super. Ct., 1981, No. 78807. See generally the decision in *Wilson* v. *Superior Court* (1987) 194 Cal.App.3d 1259 [240 Cal.Rptr. 131].) Accordingly, the judgment of the trial court will be affirmed, and the petition for mandate denied.

I

## LEGALITY OF TRANSFERRING THE JAIL OPERATION FROM THE ELECTED SHERIFF TO AN APPOINTED DEPARTMENT HEAD

The principal issue in this case is whether the county voters may transfer control of the county jail from an elected sheriff to an appointed county department head and, if so, may that transfer take place during the sheriff's term of office.

Although a statute, Government Code section 23013 (quoted in full in fn. 1) expressly authorizes transfer of control of a county jail to a county-created department of corrections, the sheriff claims that statute conflicts with the California Constitution. The Constitution explicitly provides that a

county sheriff shall be elected. (Cal. Const., art. XI, §§ 1, subd. (b) and 4, subd. (c).)[2] The sheriff argues that these provisions making his office elective prevent transfer of any of his duties to an appointed official.

## A. Infringement of Electoral Power

A California Supreme Court decision has held that the powers and duties of an elected official may not be transferred to an individual not elected by the voters. (*People* v. *Kelsey* (1868) 34 Cal. 470.) The *Kelsey* decision held that when an individual was elected Sheriff of San Joaquin County, at a time when that office also included the functions and designation of tax collector, the Legislature could not, during his term, transfer the tax collector functions to one not elected to the position.

Two opinions of the Attorney General have considered the *Kelsey* decision. (3 Ops.Cal.Atty.Gen. 247 (1944); 33 Ops.Cal.Atty.Gen. 180 (1959).) One of these concludes that the Legislature cannot assign the duties of an elected officer—whether or not he is a constitutional officer—to another official before expiration of the incumbent's term. (33 Ops.Cal.Atty.Gen., *supra,* at p. 182.) "[A] board of supervisors may not devolve [*sic*] the duties of an officer required by general law to be elected upon another official before the expiration of the officer's term." (*Ibid.*)

The above Attorney General's opinion appears to interpret *Kelsey* to hold that an elected official has a vested interest of some kind in the duties of his office. ■ In our view, however, the *Kelsey* decision articulates a narrower rule, that once the electorate has voted for a public officer, having in mind that he will perform a particular bundle of duties, then it would impermissibly negate that exercise of elective choice to take those duties from the official and give them to one not elected to perform them. *Kelsey* protects not the incumbent's right to perform specific duties, but the voters' exercise of power at the election. Nothing in *Kelsey* contradicts the great weight of precedent holding that an elected official such as Sheriff Winter here has no personal vested right to the performance of his duties, separate from the rights of the people who elected him. (See, e.g., *Martello* v. *Superior Court* (1927) 202 Cal. 400 [261 P. 476]; *Deupree* v. *Payne* (1925) 197 Cal. 529, 538 [241 P. 869]; *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838]; but cf. *Olson* v. *Cory* (1980) 27 Cal.3d 532 [178 Cal.Rptr. 568, 636 P.2d 532].)

The Attorney General's opinion also noted that an ordinance assigning the duties of a nonelected marshal to an elected sheriff was valid under

[2] California Constitution, article XI, sections 1, subdivision (b) and 4, subdivision (c), state, respectively, that the Legislature and county charters shall provide for an elected sheriff.

*Kelsey* because the ordinance required submission to the voters of the judicial district for approval. "Since the people of the district voted to abolish the office of marshal and confer the duties thereof upon the sheriff, the action of the Legislature and of the board of supervisors has not deprived the people of their choice; they have expressed their choice by approving the ordinance." (33 Ops.Cal.Atty.Gen., *supra,* at p. 182.) Similarly here, even if the *Kelsey* decision might be interpreted as preventing the supervisors from transferring duties away from the elected sheriff to a nonelected county department head, the submission of the matter to a popular vote cured any defect. The voters have ratified the transfer of function away from the official whom they elected. Consequently there is no infringement of electoral power such as was forbidden by *Kelsey.*

B. *Sheriff Is a Constitutional Officer*

We next consider to what extent the constitutionally created office of sheriff may be modified, whether by the electorate or the Legislature. ■ As a general proposition the Legislature may not abolish or change a constitutional office except as the Constitution itself expressly provides. (See generally 63A Am.Jur.2d (1984) Public Officers and Employees, § 17, p. 679; *In re Opinion of Justices* (1896) 165 Mass. 599 [43 N.E. 927, 928]; *Moncrief* v. *Gurley* (Tex.Civ.App. 1980) 609 S.W.2d 863, 865; *People* v. *Kelsey, supra,* 34 Cal. 470.)

■ Although the mere mention of an office in the Constitution does not make it a constitutionally created office (63A Am.Jur.2d, *supra,* § 32, pp. 687-688; see, e.g., *People* ex rel. *Burby* v. *Howland* (1898) 155 N.Y. 270 [49 N.E. 775]), the weight of authority in the United States holds that the office of sheriff is a "constitutional" office, whose basic, fundamental duties may not be legislatively modified. (See 1 McQuillin, Municipal Corporations (3d ed. 1987) § 1.27, p. 29; Murfree on Sheriffs (1884) pp. v-vi, 21-22; 1 Anderson on Sheriffs (1941) § 43, p. 37; *Wis. Prof. Police Ass'n* v. *County of Dane* (1982) 106 Wis.2d 303 [316 N.W.2d 656, 659-660]; *State* ex rel. *Milwaukee County* v. *Buech* (1920) 171 Wis. 474 [177 N.W. 781, 784]; *State* ex rel. *Kennedy* v. *Brunst* (1870) 26 Wis. 412, 414-415; *Ex parte Corliss* (1907) 16 N.D. 470 [114 N.W. 962, 964]; *Merrill* v. *Phelps* (1938) 52 Ariz. 526 [84 P.2d 74]; *State* v. *Knox County* (1932) 165 Tenn. 319 [54 S.W.2d 973]; *Sawyer* v. *Commissioners of Androscoggin County* (1917) 116 Me. 408 [102 A. 226]; *State* v. *Melton* (1937) 192 Wash. 379 [73 P.2d 1334, 1339]; *Beasly* v. *Ridout* (1902) 94 Md. 641 [52 A. 61, 63 et seq.]; *Murphy* v. *Yates* (1975) 276 Md. 475 [348 A.2d 837, 846, 84 A.L.R.3d 1]; see also *Jones* v. *Fortson* (1967) 223 Ga. 7 [152 S.E.2d 847, 852].)

No California case, however, has had occasion to apply this rule. Further, whatever the law may be in other states, with differing constitutional

and statutory provisions pertaining to the office of sheriff, in California the constitutional provisions do not describe, much less cast in bronze, the duties of the office. Our Constitution begins and ends with making the office of sheriff elective. It does not specify any of his duties; instead they are specified in great detail in a large body of statutory law. (See, e.g., Pen. Code, § 4000 et seq.; Gov. Code, § 26600 et seq.; and Gov. Code, § 23013, *supra,* relied on here.)

The history of the pertinent constitutional provisions is illustrative. The original constitutional clause providing for the office of sheriff, enacted in 1879, stated: "The Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, . . . , and *shall prescribe their duties,* and fix their terms of office." (Former Cal. Const., art. XI, § 5, italics added.) Changes in 1970 continued the sheriff's office as either elective or appointive but eliminated the language authorizing the Legislature to prescribe the sheriff's duties. (Former Cal. Const., art. XI, § 1, subd. (b).) The provision continued, however, to state that the Legislature shall provide for a county sheriff. (*Ibid.*)

We have found nothing that sheds light on the significance of the 1970 constitutional amendment which eliminated the language stating that the Legislature shall prescribe the sheriff's duties. However there is no evidence that at the time of the 1970 changes anyone was concerned with that language. At that time, not only was the office of sheriff either appointive or elective, but also there then existed a large body of statutory law defining the sheriff's duties which dated back at least to 1907 and possibly earlier. (See, e.g., Gov. Code, § 26600, derived from Pol. Code, § 4157, enacted in 1907 by Stats. 1907, ch. 282, § 1, p. 401.) Government Code section 23013, enacted in 1957, was part of that body of law. Since 1907 no one seems to have challenged the Legislature's power to enact these statutes, at least not on the basis that the sheriff's office was permanently defined in the state Constitution. Given this history, it is improbable that the drafters of the 1970 constitutional revisions (mainly housekeeping provisions) intended at one fell swoop to eliminate legislative power to define the sheriff's duties and thus to sweep away all these laws. More probably, the intent was to eliminate language regarded as surplus. Possibly the drafters thought that the power to provide for a sheriff includes the power to prescribe his duties and that no further verbiage was needed. We conclude that the California Constitution defines a system of government under which the state Legislature has paramount control over the definition of the sheriff's duties.

Constitutional provisions governing charter counties such as Santa Clara County provided as far back as 1911 for an elected or appointed sheriff

(former Cal. Const., art. XI, § 7 1/2). The 1970 modifications retained the office as appointive or elective in the county. (Cal. Const., art. XI, § 4, subd. (c).) The original provision (art. XI, § 7 1/2) provided that charters framed under the constitutional authority shall provide for sheriffs *and for the powers and duties* of county officers, and this provision was reenacted in the 1970 version. (Art. XI, § 4, subd. (e), italics added.) Thus although the express permission to the Legislature to define the sheriff's duties was actually dropped from the Constitution, the drafters retained the language allowing counties to provide for the duties of county officers, a category which arguably includes sheriffs. The significance of this discrepancy eludes us; possibly an argument might be made that the intention was to strengthen home rule by transferring the power to define the sheriff's duties to the local level, but, given the vast body of statewide statutory law defining the duties of the sheriff, we are not prepared to hold that this constitutional revision gives a county carte blanche to alter the sheriff's responsibilities. Here we need not decide the extent to which the state Legislature and the county board of supervisors may share power over the office of sheriff. In our case the Legislature has enacted a statute, Government Code section 23013, *supra,* expressly authorizing the county to transfer control of the jail to a county department as was done here. Accordingly we need only conclude, and we do conclude, that statute is a valid exercise of legislative power. The drafters of our state Constitution did not intend to "stretch the state upon a bed of Procrustes" by making the office immune from legislative definition and modification. (See *State* ex rel. *Milwaukee County* v. *Buech, supra,* 177 N.W. 781, holding the legislature may impose a civil service system upon the method of appointing sheriff's deputies.)

Sheriff Winter relies upon the Wisconsin decisions cited *supra,* which hold that the Legislature may not modify those duties of the sheriff that are generally recognized as belonging to the office when the state Constitution was adopted. (See *Wis. Prof. Police Ass'n, supra,* 316 N.W.2d at p. 659; *State* ex rel. *Kennedy, supra,* 26 Wis. at pp. 414-415; accord, *Merrill* v. *Phelps, supra,* 84 P.2d 74; *State* v. *Melton, supra,* 73 P.2d 1334.) He points out that in Wisconsin, similarly to California, the state Constitution creates the sheriff's office and mandates that it shall be elective, but does not specify the sheriff's duties. (See Cal. Const., art. XI, §§ 1, subd. (b) and 4, subd. (c), *supra*; cf. Wis. Const., art. VI, § 4, quoted in *Wis. Prof. Police Ass'n, supra,* 316 N.W.2d at p. 659.) Further, the decision in *State* ex rel. *Kennedy, supra,* held a statute unconstitutional which transferred control of the Milwaukee county jail from the sheriff to an inspector of the house of correction. The court said such a transfer infringed the constitutional office and also was an unwarranted interference with the power of the electorate. (*State* ex rel. *Kennedy, supra,* 26 Wis. at pp. 414-415, quoted with approval in *Wis. Prof. Police Ass'n, supra,* 316 N.W.2d at p. 659.)

The decision in *State* ex rel. *Kennedy, supra,* is not controlling in California. Our constitutional provisions are more like those considered by the Maryland court in *Beasly* v. *Ridout, supra,* 52 A. 61, a case which found no constitutional impediment to a transfer of authority over the jail. The facts in *Beasly* were similar to those here: the state legislature took from the sheriff of Anne Arundel County the charge, control, and supervision of the county jail, and vested it in a board of visitors provided by the act. The *Beasly* court said such a transfer was authorized. The court held that the sheriff's office in Maryland was not immune from legislative change because express language in the Maryland Constitution left the sheriff's duties to future legislative definition. The constitutional provision said the sheriff "shall exercise such powers and perform such duties as are now or may hereafter be fixed by law.'" (*Beasly* v. *Ridout, supra,* at p. 63; see discussion in *Murphy* v. *Yates, supra,* 348 A.2d at p. 846.)

Similarly in California we believe the Constitution leaves the sheriff's duties to future definition. As we have discussed previously, the political history of the office of sheriff in California, including the large body of statutory law defining the sheriff's duties, supports that conclusion. The sheriff's office in California has historically been defined by the Constitution and by long-standing legislation. Here, as in Maryland, the Constitution was not intended to freeze the sheriff's duties. Neither contemporaneously with its adoption nor at any later time has it been so interpreted.

The Constitution specifies only one attribute of the sheriff's office—that it is elective. That requirement results from the 1978 election when the voters so amended the Constitution. (Prop. 6, enacting Cal. Const., art. XI, §§ 1, subd. (b), and 4, subd. (c), *supra.*) It is noteworthy that the 1978 constitutional changes left intact the provision discussed above authorizing charter counties to specify the duties of county officers. (Cal. Const. art. XI, § 4, subd. (e), formerly art. XI, § 7 1/2.) Thus it is unlikely that the voters in enacting Proposition 6 intended to prevent any further modification of the sheriff's duties.

It is important to bear in mind that when these 1978 constitutional changes occurred, the statute whose validity we consider here, Government Code section 23013, *supra,* enacted in 1957, had been on the books for two decades. Two counties, Napa and Madera, had established county departments of corrections with control over the county jails pursuant to Government Code section 23013. (The changes were established in Napa County in 1975, and in Madera County in 1977, ultimately effective Nov. 1, 1978.) Also, an opinion of the Attorney General had expressly found the statute valid. (52 Ops.Cal.Atty.Gen. 228 (1969).) Accordingly, it follows that at least potentially, the bundle of rights and powers appertaining to the office

of sheriff in California in 1978 was subject to being truncated, under section 23013, by transfer of the jail function to a county employee. The proponents and ratifiers of the 1978 constitutional amendment are presumed to have been aware of then existing law, including Government Code section 23013. (See, e.g., *Mitchell* v. *Superior Court* (1987) 43 Cal.3d 107, 122, fn. 15 [232 Cal.Rptr. 900, 729 P.2d 212]; *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].) Although the voters could have specified that from the date of the constitutional amendment forward the jail function could not be transferred away from the sheriff except by further constitutional amendment, they did not; instead they ratified Proposition 6 which said no more than that the office of sheriff would henceforth be elective.

We have taken judicial notice of the ballot arguments submitted in favor of and opposing Proposition 6 in 1978. Nothing in this literature mentions either Government Code section 23013 or the question of the sheriff's authority over the county jail. The argument in favor of the proposition seeks to make the sheriff directly answerable to the electorate rather than to an appointing power. It makes three points: (1) the election of sheriffs is a basic democratic principle which insures independence and professionalism in the office; (2) sheriffs have broad powers and responsibilities enumerated in virtually all of the California codes, one of the most awesome of these responsibilities being a mandate to take appropriate action when there is a breakdown of law enforcement at the local level in a municipality; (3) it is desirable to preserve the sheriff's independence from political influences. No mention is made of the power to administer the county jail.

Under these circumstances it is inappropriate to presume that the voters intended to repeal Government Code section 23013. Repeal by implication is disfavored. (E.g., *People* v. *Maki* (1984) 161 Cal.App.3d 697, 700 [207 Cal.Rptr. 777]; *Scott Co.* v. *Workers' Comp. Appeals Bd.* (1983) 139 Cal.App.3d 98, 105 [188 Cal.Rptr. 537, 34 A.L.R.4th 949]; *People* v. *Connor* (1964) 229 Cal.App.2d 716, 718 [40 Cal.Rptr. 603].) What is more, the ballot arguments expressly referred to the extensive body of statutory law defining the duties of sheriff. The voters were therefore aware that the Legislature had acted in manifold ways to define the office, yet they expressed no intention to take that power away from the Legislature. Instead it must be assumed that the voters intended to protect from legislative interference only the elective nature of the office.

We note that two appellate decisions have assumed the validity of section 23013 since its enactment. (*People* v. *Garcia* (1986) 178 Cal.App.3d 887 [223 Cal.Rptr. 884]; *Brandt* v. *Board of Supervisors* (1978) 84 Cal.App.3d

598 [147 Cal.Rptr. 468].) Apparently the parties did not challenge the statute's constitutionality in either case.

We conclude that Government Code section 23013 is not in conflict with the California Constitution. The Legislature has always had, and still enjoys plenary power to define the sheriff's duties. Accordingly it acted validly in enacting Government Code section 23013 transferring authority over the jail at local option.

We emphasize that we look only to the combined effect of Government Code section 23013 and the election as the source of authority for the transfer here. These two elements form both a necessary and a sufficient foundation. Because the sheriff, as stated, is a constitutional officer, his duties are of statewide importance, a fact further cemented by the existence of myriad statutes regulating his duties. These functions are otherwise mutable at local option only to a limited extent which we need not determine in this case. Accordingly we need be concerned neither with the technical aspects of the original "urgency" ordinances here, nor with the validity of Proposition A which is not before us here in any event. We look solely to the statute, a legislative enactment, which along with the expressed will of the electorate provides authority for the action taken here.

C.  *Separation of Powers*

■   We next consider whether the elimination of a major share of the sheriff's responsibilities (more than one-half, measured by allocated monies) infringes the principle of separation of powers within *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228 [138 Cal.Rptr. 101]. In *Hicks,* the Court of Appeal invalidated a county resolution transferring 22 members of the investigative staff of the district attorney's office to the sheriff. The resolution was not undertaken as part of the budgetary process nor was it "proposed or considered by the board as a budget item." (*Hicks, supra,* at pp. 232-233.) The *Hicks* court recognized and validated the budgetary power of a county board of supervisors, but found that the resolution there was in substance a *transfer of functions* rather than a budgetary measure, transferring control "of one officer's statutory function to another." (*Hicks, supra,* at p. 244.) The court found such an action in excess of the jurisdiction of the board of supervisors, for it has no statutory or constitutional power of control over the district attorney nor any power to transfer control over the latter's subordinate employees. (The decision cites *County of Modoc* v. *Spencer* (1894) 103 Cal. 498, 500-501 [37 P. 483], holding a board of supervisors may not confer the district attorney's discretionary powers on another.)

County, however, responds that its position is supported by the decision in *County of Butte* v. *Superior Court* (1985) 176 Cal.App.3d 693 [222 Cal.Rptr. 429], which holds that a county board of supervisors as part of its budgetary role may order reduction of the sheriff's staff in the form of demotions and layoffs. In that case the supervisors of Butte County adopted a new budget reducing overall staffing of the sheriff's department, and the sheriff sought to enjoin that reduction as an impermissible invasion of his executive authority which would render him unable to perform his statutorily mandated duties of office. However, the Court of Appeal, reversing a preliminary injunction issued in the trial court, relied on the fundamental proposition that the adoption of a budget is a legislative function exclusively committed to that branch of government. A court is powerless to interfere in the budgetary process. (176 Cal.App.3d at p. 698.) The court pointed out that the county board of supervisors is responsible for fixing the number of employees of each county office, their compensation, and their conditions of employment, citing the Constitution (Cal. Const. art. XI, § 4, subd. (f)), statutes (Gov. Code, §§ 29088, 25300) and various provisions of the Butte County Charter. (See *County of Butte, supra,* at p. 698.) The court concluded that "[g]iven these well defined and irrefutable principles, it is patent that the Butte County Board of Supervisors was acting within the scope of its constitutional role in undertaking to reduce the size of the Sheriff's staff. . . . The chaos that would result if each agency of government were allowed to dictate to the legislative body the amount of money that should be appropriated to that agency, or its staffing and salary levels, is readily apparent. The budgetary process entails a complex balancing of public needs in many and varied areas with the finite financial resources available . . . . [I]t is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available." (*Id.,* at p. 699.)

The court in the *Butte County* decision distinguished the *Hicks* case, *supra.* The difference between the *Butte County* decision and the *Hicks* decision is that in the former, the county was legitimately concerned with cutting expenses and as part of its normal promulgation of the county budget reduced the appropriations for the sheriff's department. This action was held to be within the legitimate legislative budgetary power, not reviewable judicially. In *Hicks,* the county directly ordered a transfer of positions from the district attorney's office to another county office. Whether or not this transfer was motivated by cost considerations, it was not effected as part of the normal budgetary process. The Court of Appeal there specifically found the substance of the enactment was to interfere with management of the district attorney's office, and that action was found beyond the county's power.

However, a critical difference between the *Hicks* case and the situation at bench is the existence here of a specific statute, Government Code section 23013, authorizing the transfer of function. The county in *Hicks* had no express authority whatsoever to transfer the district attorney's investigators to another department. The court merely held that what the county had no express authority to accomplish could not be done under the guise of the budgetary power. Here, on the other hand, although the power of the budget may not authorize the action, the statutory law does. As we have stated, the statute is constitutional and expressly permits counties to assume control over jail operations. Accordingly we do not have here, as in *Hicks,* wholly unauthorized legislative interference in the executive branch of county government. The separation of powers principle therefore does not prevent the transfer of power here.

## II

### Sentenced Versus Unsentenced Prisoners

■   Beck argues that Government Code section 23013 confers jurisdiction on the county over sentenced, but not unsentenced, prisoners. The argument may be briefly summarized as follows: the language of Government Code section 23013 includes many concepts relevant only to sentenced prisoners, viz., punishment and rehabilitation of prisoners. These responsibilities are irrelevant to unsentenced detainees who are presumed innocent and require neither punishment nor rehabilitation. Therefore, the statute was not intended to transfer responsibility for such prisoners, but rather was only intended to apply to sentenced offenders.

An immediate weakness in this argument is that other language in the statute is relevant to both classes of offenders, namely, references to care and treatment.

As extrinsic evidence for this argument, Beck relies heavily on a study on probation, jails and parole prepared in 1957 which directly recommended, and led to the enactment of, section 23013. (Probation Jails and Parole, 2d Interim Rep. of Special Study Com. on Correctional Activities and Services.) The recommendation to add Government Code section 23013 to the law begins by saying "[t]he purpose of this recommendation is to give explicit recognition to the principle that correction as well as custody is a primary function of the county jail." (Probation Jails and Parole, *supra,* at p. 33.) "Correction" applies only to sentenced prisoners. The report further states that there is growing "contemporary opinion that corrections is essentially not a police function." (*Ibid.*) Again, the focus is on a concept relevant only to sentenced prisoners, and the expressed intent is to transfer

jurisdiction over such prisoners away from the police and into a county department of correction.

However, the cited authority cuts in favor of the opposite interpretation as well. The recommendation is to merge all county correctional institutions for adults into one unit. That is hardly a recommendation to transfer jurisdiction over some, but not all, of the county jail inmates to a separate authority.

Further, there is much to be said for the trial court's view that such separation of jurisdiction would be impractical and unwieldy. The court found the county has demonstrated that to require one jail operated by the sheriff for unsentenced prisoners and another jail (or part of a jail) operated by the DOD would be "clearly inefficient and probably unworkable." Not only has this finding not been satisfactorily rebutted by anything before us, but also, the dispute spawned by our stay order and by the uneasy juxtaposition of two authorities over the jail demonstrates graphically the impracticality of having two chiefs in the jail.

A further argument by Beck is that statutory repeal by implication is disfavored. (See authorities cited, *supra,* p. 799.) Most of the sheriff's statutory duties relate to the receipt, care, and guarding of unsentenced prisoners. (Pen. Code, §§ 4000-4016, 4018.6, 4020.4, 4024, 4115, and Gov. Code, § 26605.) Thus, rather than construing Government Code section 23013 as repealing by implication all of these statutes, Beck says the statute should be harmonized with them by regarding it as authorizing only transfer of authority over sentenced prisoners. That interpretation has the advantage of preserving all the statutes simultaneously in effect. It has the disadvantage, however, in addition to impracticality, of having no clear support in the legislative history. We agree with the opinion of the Attorney General that section 23013 was intended as an alternative statutory scheme to be adopted at local option. (52 Ops.Cal.Atty.Gen. 228, 229, *supra.*)

There is no doubt that the primary focus of the study cited above was rehabilitation of sentenced offenders. The study recommended the statute to implement this purpose, Nevertheless there is nothing in the report or the statute as enacted to show anyone considered separating sentenced and unsentenced offenders or contemplated transferring authority only over the former category. The lack of any explicit authority for this interpretation is a serious weakness in the argument. We conclude that the statute authorizes a county to assume all or a portion of the jail function, as it sees fit.

## III

### PEACE OFFICER STATUS

Both Beck and DSA argue that subordinates of the DOD are not expressly named in chapter 4.5 of the Penal Code as peace officers, although Penal Code section 830 provides that no person other than those designated in that chapter is a peace officer. The sheriff and his deputies, on the other hand, are peace officers. (Pen. Code, § 830.1.) Penal Code section 831 provides that a custodial officer is a public officer, not a peace officer, and shall have no right to carry firearms in performing his duties. However, DSA argues that maintaining jail security, particularly over unsentenced prisoners awaiting trial, requires that the custodian bear arms.

Accordingly, Beck and DSA recommend that to harmonize these conflicts of jurisdiction, the DOD employees be given responsibility for the administrative and rehabilitative functions related to operating the jail, such as care and treatment, medical and food services, counseling and rehabilitation programs, while sheriffs' deputies would continue to exercise responsibility for the custody and transportation of persons confined in the county jail. DSA says that although the study which led to section 23013 recognizes that corrections is not historically a police function, the bearing of arms and arrest and detention of persons charged with crime is.

County has declared in the memorandum of understanding entered into with DSA that it will maintain the peace officer status under Penal Code section 830.1 of the deputy sheriffs transferred from the sheriff's department to the DOD. However, DSA expresses fears that this cannot be done in the face of the literal language of Penal Code section 830.1, *supra.* DSA also implies that many of the transferred deputies will choose to resign, so that there will not be enough legitimate peace officers to maintain order. Also, on the related petition for writ of mandate alleging violation of our stay order, Winter has tendered declarations which he claims shows the incapacity of many DOD employees to safely perform their functions.

County, however, argues that none of these problems is presently before this court. Any problems that may potentially arise from understaffing or from unavailability of qualified peace officers who may bear arms must be dealt with if and when they do arise. We agree that an advisory opinion as to possible but not actual problems is not called for at this time. (E.g., *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 171-175 [188 Cal.Rptr. 104, 655 P.2d 306].)

Also, it is not clear as a matter of law that persons not explicitly listed in the Penal Code provisions may not be peace officers. (See, e.g., *Boxx* v.

*Board of Administration* (1980) 114 Cal.App.3d 79, 85 [170 Cal.Rptr. 538].) Provided there is authority to perform police functions, there is concomitant authority to hire "peace officers," under the *Boxx* decision. Here, the statute, section 23013, confers authority on county to administer the jails. Presumably that authority carries with it authority to hire persons qualified to perform those functions.

## IV

### ATTORNEYS FEES

Winter and other parties argue entitlement to attorneys fees in this matter, both for bringing a lawsuit to redress important rights to the referendum and initiative (which issues have mooted out by county's compliance) and for presenting for decision important questions concerning the peace officer status of deputies. As county concedes, the standard for an award of fees (Code Civ. Proc., § 1021.5) is whether the action vindicated an important right. (E.g., *Woodland Hills Residents Assn. Inc.* v. *City Council* (1979) 23 Cal.3d 917, 938 [154 Cal.Rptr. 503, 593 P.2d 200].) Also, the sheriff may have rights to fees under other statutes. (Gov. Code, §§ 995, 996.4, and 29601.)

In our opinion, a remand to the trial court is justified so that it may reconsider the issue of fees in light of the discussion in this opinion. We are not inclined to decide in the first instance whether fees are justified. Also, we agree that the constitutional issues presented here are difficult and are of first impression in this state. The trial court should consider these facts when it is presented with the issue whether under appropriate legal standards an award of fees to any party is justified here.

## V

### WRIT OF MANDATE

By his petition for mandate, prohibition, or other relief, the Sheriff alleges violation of our stay order pending appeal. Winter contends the county refuses to budget necessary positions for the sheriff; instead loans new DOD-employed correctional officers to the sheriff to fill the vacancies; but retains control over these employees, gives the sheriff no authority to hire and fire, and will not turn over their histories or other information in their files. As a result the sheriff cannot control them nor does he know that they may safely be deployed in the jails. The sheriff requests this relief: (1) order county to turn over to Winter the personnel and background files of all correctional officers working in the jails; (2) order that correctional officers

shall not be hired for placement in the jails except by appointment of the sheriff after review of their personnel documents; (3) order the county to fund the sheriff's custody unit, budget unit 235, to provide adequate employees working in the jail facilities, and to transfer administrative responsibility for this money from DOD, unit 240, to sheriff, unit 235; (4) issue a writ commanding the county to desist from further interference with the sheriff's administration of the jails pending the outcome of the appeal herein.

Clearly most of the relief prayed for is moot, since coadministration of the jails is no longer required and since contempt sanctions were not requested. Thus, even if there had been a violation of the stay order, it would now be academic. Further, our examination of the hearing resulting in the decision to loan county officers to the sheriff convinces us that this matter is one of ongoing jail administration and falls within the bailiwick of the superior court now presiding over the Branson litigation regarding jail conditions. It was in that very litigation that the sheriff first requested that correctional officers be loaned to his department, and that solution was negotiated and recommended by the compliance officer in Branson. Further, the sheriff was led to request the employees because he found himself, due to understaffing, unable to fulfill his obligations under Branson, such as transporting prisoners to a medical facility for treatment. Accordingly, the problem has its genesis in the ongoing turf war over county jail administration and should be resolved by the tribunal with authority over that dispute.

## VI

### DISPOSITION

By placing the measure for transfer of the jail administration on the ballot, county satisfied the legal requirement that electoral power not be frustrated by a midstream transfer of power from an elected to an appointed official. Under these circumstances, we affirm the judgment of the trial court insofar as it denied injunctive or other relief preventing the transfer of administration of the Santa Clara County jail to the county-created department of detention. We express no opinion on other findings of the trial court which are now moot touching on whether the resolutions could be validly enacted as urgency measures and whether a referendum could be denied on the measures. The judgment appealed from is in relevant part affirmed, and the question of attorney fees is remanded to the trial court for further appropriate proceedings.

The petition for writ of mandate is denied as moot. Our temporary stay of implementation of the transfer of power is vacated, effective immediately.

Brauer, J., and Capaccioli, J., concurred.

The petitions for a rehearing were dened September 28, 1988, and appellants' petitions for review by the Supreme Court were denied November 23, 1988. Panelli, J., was of the opinion that the petitions should be granted.