OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

OPINION

of

JOHN K. VAN DE KAMP
Attorney General

CLAYTON P. ROCHE
Deputy Attorney General

:
:
:
:
:
:
:
:
:
:
:
:
:

No. 88-1201

JULY 6, 1989

---

THE HONORABLE DAVID D. MINIER, DISTRICT ATTORNEY OF MADERA COUNTY, has requested an opinion on the following questions:

With respect to custodial officers of a county Department of Corrections in a general law county:

1. Does Penal Code section 12031 prohibit such officers from carrying a loaded firearm on their person or in a vehicle in a public place?

2. Does Penal Code section 171b prohibit such officers from carrying a firearm into a courthouse in the performance of their duties?

3. Does Penal Code section 12403.7, subdivision (a) (8), prohibit such officers from using tear gas to suppress a jail riot or escape other than in self defense?

4. Does Penal Code section 4030 prohibit such officers from making a strip search or body cavity search of a person held in custody for a misdemeanor offense which does not involve weapons, controlled substances or violence prior to the placement of such persons in the general jail population?

5. Does Penal Code section 830.5 empower the officer in charge of such department to authorize the custodial officers of such department to carry a firearm?

CONCLUSIONS

With respect to custodial officers of a county Department of Corrections in a general law county:

1. Penal Code section 12031 does prohibit such officers from carrying a loaded firearm on their person or in a vehicle in a public place except when transporting prisoners under the direction of the officer in charge of the Department of Corrections.

2. Except where permission has been granted in writing by the sheriff or a chief of police, Penal Code section 171b does prohibit such officers from carrying a firearm into a courthouse in the performance of their duties.

3. Penal Code section 12403.7, subdivision (a) (8), does prohibit such officers from using tear gas to suppress a jail riot or escape other than in self defense.

4. Penal Code section 4030 does prohibit such officers from making a strip or body cavity search of a person held in custody for a misdemeanor offense which does not involve weapons, controlled substance or violence prior to the placement of such person in the general jail population with three exceptions discussed in the Analysis.

5. Penal Code section 830.5 does not empower the officer in charge of such department to authorize the custodial officers of such department to carry a firearm.

ANALYSIS

Section 26605 of the Government Code provides that "[t]he sheriff shall take charge of and keep the county jail and the prisoners in it." (See also Penal Code, § 4000 et seq.)

However, in 1957 the Legislature provided an alternative scheme for the administration of the county jail system by the enactment of section 23013 of the Government Code. (Stats. 1957, ch. 243.) That section provides:

"The board of supervisors of any county may, by resolution, establish a department of corrections, to be headed by an officer appointed by the board, which shall have jurisdiction over all county functions, personnel, and facilities, or so many as the board names in its resolution, relating to institutional punishment, care, treatment, and rehabilitation of prisoners, including, but not limited to, the county jail and industrial farms and road camps, their functions and personnel.

"The boards of supervisors of two or more counties may, by agreement and the enactment of ordinances in conformity thereto, establish a joint department of corrections to serve all the counties included in the agreement, to be headed by an officer appointed by the boards jointly."

This section was recently held to be constitutional against the claim that it was an improper attempt to transfer constitutionally granted powers and duties of the sheriff to a statutorily created agency. (See *Beck* v. *County of Santa Clara* (1988) 204 Cal.App. 3d 789, review denied by the California Supreme Court.)

Accordingly, a county board of supervisors at its option may, by resolution, transfer those "functions, personnel, and facilities" which relate to the "institutional punishment, care, treatment, and rehabilitation of prisoners" from the sheriff to the new Department of Corrections. It can transfer all of these "or so many as the board names in its resolution." As succinctly stated by the Court in *Beck* v. *County of Santa Clara, supra*, 204 Cal.App.3d at page 803, "[w]e conclude that the statute [Government Code, section 23013] authorizes a county to assume all or a portion of the jail function, as it sees fit."

Madera County, a nonchartered county, is one of several counties in the state which have availed themselves of the provisions of section 23013 of the Government Code.[1/] Using the terminology of the statute, the Board of Supervisors by Resolution Nos. 77-416 and 78-514 transferred all the county jail function to a new Department of Corrections to be under the administrative jurisdiction and control of a Director of the Department of Corrections. That officer is appointed by and is responsible to the Board of Supervisors.

Crucial to the questions presented for resolution herein is the scope of this transfer, that is, what is included in a transfer of all the county jail function from the sheriff to a Department of Corrections. In assessing this, the following rule of construction is material. "[W]here the main purpose of the statute [in our case, Government Code section 23013] is expressed the courts will construe it so as to effectuate that purpose by reading into it what is necessary or incident to the accomplishment of the object sought." (*Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604. See also, e.g., *County of Los Angeles* v. *Graves* (1930) 210 Cal 21, 25; *Skidmore* v. *West.* (1921) 186 Cal.212, 218; *Clay* v. *City of Los Angeles* (1971) 21 Cal.App.3d 577, 585.) Accordingly, the transfer of all the county jail function of the sheriff would also constitute the transfer of all the sheriff's powers and duties for the institutional punishment, care, treatment and rehabilitation of prisoners in the county jail and other county detention facilities to the Director of the Department of Corrections. (See *People* v. *Garcia* (1986) 178 Cal.App.3d 887, 895.)

Also crucial to the questions presented herein is the legal status of the custodial officers who staff a county jail or other county detention facility. Under the provisions of Penal Code section 831 (cities, and counties having a population of more than 425,000) and Penal Code section 831.5 (counties having a population of 425,000 or less) such custodial officers are "public officers" but not "peace officers." (See also *People* v. *Garcia, supra*, 178 Cal.App.3d 887.) Thus Penal Code section 831.5 contains the following definitions:

"(a) As used in this section, a custodial officer is a public officer, not a peace officer, employed by a law enforcement agency of a county having a population of 425,000 or less who has the authority and responsibility for maintaining custody of prisoners and performs tasks related to the operation of a local detention facility used for the detention of persons usually pending arraignment or upon court order either for their own safekeeping or for the specific purpose of serving a sentence therein. A custodial officer includes a person designated as a correctional officer, jailer, or other similar title. The duties of custodial officers may include the service of warrants, court orders, writs and subpoenas in the detention facility or under circumstances arising directly out of maintaining custody of prisoners and related tasks."[2/]

---

1. Santa Clara County, a chartered county, has also recently established such a department. Its establishment has been the subject of extensive litigation. See generally *Beck* v. *County of Santa Clara, supra*, 204 Cal.App.3d 789, review denied by the California Supreme Court.

The department, designated the Department of Detention, is provided for in the county charter. The answer to the questions presented herein could well depend upon the local charter. (See Cal. Const. art XI, § 4.) Accordingly, the analysis herein is restricted to noncharter counties which are governed by general law.

2. Section 831.5 instead of section 831 is quoted since Madera County and Napa County, the only counties other than Santa Clara County of which we are aware which have a county Department of Corrections, both have a population less than 425,000.

It is the fact that county custodial officers are not peace officers which gave rise to the questions presented herein.[3/]

      1.  Section 12031 of the Penal Code

The first question presented is whether custodial officers in a Department of Corrections nonchartered county formed pursuant to section 23013 of the Government Code would violate section 12031 of the Penal Code if they carried a loaded firearm on their person or in a vehicle, in a public place.

Section 12031, subdivision (a) states:

"(a)  Except as provided in subdivision (b), (c), or (d), every person who carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor."

Subdivision (b) of section 12031 excepts active or retired peace officers and others not germane to our inquiry such as military personnel, retired federal officers, and persons licensed to carry weapons or persons engaged in target practice. Subdivision (c) excepts certain persons who have completed a regular course in firearms training approved by POST, that is, patrol special officers, animal control officers, zookeepers and harbor policemen. Subdivision (d), the remaining exception, exempts certain bank guards and messengers, armored car operators, private investigators, private security guards and in subdivision (d) (4), the only potential category to our inquiry herein, "[u]niformed security guards or night watchmen employed by a public agency, while acting within the scope and course of their employment."

---

Except for its applicability to cities and larger counties, section 831 is otherwise virtually identical to section 831.5 except in two other respects:  (1)  Subdivision (a) of section 831 does not contain the second and third sentences contained in section 831.5.  The substantive difference concerns the duty to serve warrants, orders, writs and subpoenas; and (2) subdivision (b) of 831 of the Penal Code provides that "[a] custodial officer shall have no right to carry or possess firearms in the performance of his prescribed duties" whereas subdivision (b) of section 831.5 permits such officers limited authority to do so, as will be discussed *post*.

3.  Since sections 831 and 831.5 of the Penal Code both state that "a custodial officer is a public officer, not a peace officer" we reject the suggestion that they should be held to have such status to adequately perform their duties.  In the absence of controlling statutes such as sections 831 and 831.5 such argument could be made despite the provisions of section 830 et seq. of the Penal Code which states that the enumeration of peace officers therein is exclusive.  See the dicta and other statements in cases such as *Beck* v. *County of Santa Clara, supra*, 204 Cal.App.3d 789, 804-805; *Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384-1385; and *Boxx* v. *Board of Administration* (1980) 114 Cal.App.3d 79, 85.  Nor do we believe that statutes in the County Employees Retirement Laws such as section 31904, which may include "jailers" and "turnkeys" within the definition of "county peace officer" for the purpose of that law can override the specific provisions of the Penal Code. (See also *Tuolumne County Deputy Sheriffs' Association* v. *Board of Administration of the Public Employees' Retirement System* (1989) _ Cal.App.3d._ (1st Dist, Div. 5, 4/26/89); *Schaeffer* v. *California Pub. Employees' Retirement System* (1988) 202 Cal.App.3d 609.)

Any suggested change in the status of custodial officers should be addressed to the Legislature.

In determining whether the public "security guard" exception would encompass county custodial officers, we examine section 12031, subdivision (d) (5) with respect to "uniformed security guards" hired by private employers. We note that they are exempt from the prohibition of section 12031 when "regularly employed and compensated as such by persons engaged in any lawful business . . . while actually engaged in protecting and preserving the property of their employers. . . ." (Emphasis added.) We presume that the Legislature intended the term "uniformed security guards" to have the same meaning in both section 12031, subdivision (d) (4) and (d) (5). The function of such guards whether publicly or privately employed is to protect and preserve property. However, as is seen from an examination of sections 831 and 831.5 of the Penal Code, the function of custodial officers is to maintain custody of prisoners. Accordingly, we do not believe that the Legislature intended the term "uniformed security guards" to encompass "custodial officers."

This, however, still leaves the question whether county custodial officers are granted the authority to carry a loaded firearm on their person or in a vehicle in public by necessary implication as a result of the transfer of all the county jail function from the sheriff to the Department of Corrections pursuant to section 23013 of the Government Code and the board's resolutions. In this respect, the administrative construction of section 25013 of the Government Code by the two counties Madera and Napa Counties, the two general law counties which have Departments of Corrections, is helpful. We are informed that in both counties the custodial officers who actually man the detention facilities are not armed. Accordingly, even giving the term "necessary" its broadest connotation, it is not "necessary" for custodial officers to be armed to perform the usual jail functions, that is, those which relate to the institutional punishment case, treatment and rehabilitation of prisoners.

Accordingly, except while transporting prisoners as discussed in the next question, we conclude that county custodial officers are not authorized to carry weapons on their person or in a vehicle in a public place. A contrary conclusion would not only be contrary to the plain meaning of section 12031 of the Penal Code, but would also fly in the face of sections 831 and 831.5 of the Penal Code, where the Legislature has prohibited such officers from carrying weapons in the larger counties, and has prescribed the terms and conditions under which such officers may do so in the smaller counties.

Accordingly, we conclude that section 12031 does prohibit such officers from carrying a loaded firearm on their person or in a vehicle, in a public place.

2. Section 171(b) of the Penal Code

The second question presented is whether county custodial officers of a county Department of Corrections would violate Penal Code section 171(b) if they carried a firearm into a courthouse in the performance of their duties.

Section 171(b) provides as follows:

"Any person, except a person who possesses or transports weapons to be used as evidence in a court of law, a duly appointed peace officer as defined in Chapter 4.5 (commencing with Section § 830) of Title 3 of Part 2, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, any person summoned by any such officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting such officer, a person holding a valid license to carry the firearm pursuant to Article 3 (commencing with Section 12050) of Chapter 1 of Title 2 of Part 4, or a person holding a valid tear gas weapon card pursuant to Section 12403.7 allowing that

person to carry the tear gas, who brings or possesses, within any courtroom or building designated as a courthouse or court building in this state or at any meeting required to be open to the public pursuant to Chapter 9 (commencing with Section 54950) of Part 1 of Division 2 of Title 5 or Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code, any firearm, deadly weapon described in Section 12020 or 653, knife with a blade length in excess of four inches, the blade of which is fixed or is capable of being fixed in an unguarded position by the use of one or two hands, tear gas weapons, as defined in Sections 12401 and 12402, tasers, or stun guns, as defined in Section 244.5, <u>unless permission to possess that weapon is granted in writing by a duly authorized official or officials</u>, is guilty of a public offense punishable by imprisonment in the county jail for not more than one year, or in the state prison." (Emphasis added.)

Thus, under the terms of section 171b, only peace officers and other designated persons may bring firearms and other designated weapons into a courthouse "unless permission to possess that weapon is granted by a duly authorized official or officials."[4/] The law is silent as to who are such "authorized officials." However, since custodial officers are not peace officers or otherwise excepted in section 171b, they may not carry firearms into a courthouse without the requisite permission of a duly authorized official.

But this does not end our inquiry or analysis. It is to be recalled that section 831.5 of the Penal Code relating to "custodial officers" is applicable in counties with a population of 425,000 or less. Subdivision (b) of section 831.5 provides:

"(b) A custodial officer shall have no right to carry or possess firearms in the performance of his or her prescribed duties, except, under the direction of the sheriff or chief of police, <u>while engaged in transporting prisoners</u>; guarding hospitalized prisoners; or suppressing jail riots, lynchings, escapes, or rescues in or about a detention facility falling under the care and custody of the sheriff or chief of police." (Emphasis added.)

Thus, by statute custodial officers in these counties may carry firearms in certain specified situations while in the performance of their duties under the direction of the sheriff or chief of police.

In *People* v. *Garcia, supra*, 178 Cal.App.3d 887, the court, in determining that the Department of Corrections in Madera County was a "law enforcement agency" for purposes of section 243.1 of the Penal Code (battery upon a "custodial officer"), assumed that one of the functions which was transferred from the Sheriff to the Director of the Department of Corrections under the terms of section 23013 of the Government Code and the board's resolution was the duty to transport prisoners to and from the courthouse. While the duty to transport prisoners to and from the courthouse may have been transferred to the County Department of Corrections, it does not follow that the power to authorize the custodial officers who are engaged in transporting prisoners was also transferred to the Department of Corrections. Section 831.5(b) expressly states that

---

4. We note that this exception modifies all the enumerated weapons, and not merely the immediate antecedent "tasers, or stun guns, as defined in Section 244.5." This is made clear from the Legislative Counsel's Digest which accompanied Senate Bill 1799, 1988 Regular Session, which added this exception as chapter 453, Statutes of 1988.

custodial officers are prohibited from carrying or possessing firearms in the performance of their duties, including the transportation of prisoners, "except, under the direction of the sheriff or chief of police." We conclude that custodial officers may not carry or possess firearms in the performance of their duties, including the "transporting of prisoners" unless directed to do so by the sheriff or a chief of police.

Penal Code section 171b imposes an additional requirement for custodial officers who carry or possess firearms within a courthouse. In this situation we believe the "authorized officials" who may give the permission to possess a weapon in a courthouse under section 171b are the sheriff or the chief of police who directed them to carry firearms while engaged in transporting prisoners. In addition to such direction, Penal Code section 171b requires that the permission to carry a firearm into a courthouse be in writing and designate the kind of weapon ("that weapon") for which permission is granted.

### 3. Section 12403.7 (a)(8) of the Penal Code

Penal Code sections 12400-12458 regulate the possession, sale and use of tear gas weapons.

The third question presented is whether section 12403.7, subdivision (a)(8), prohibits county custodial officers from using tear gas or tear gas weapons not in self defense, but to suppress a jail riot or an attempted escape. We conclude that it does. Section 12403.7 as material to our inquiry provides in part:

"(a) Notwithstanding any other provision of law, any person may purchase, possess or use tear gas and tear gas weapons for the projection or release of tear gas if such tear gas and tear gas weapons are approved by the Department of Justice and are used solely for self-defense purposes, subject to the following requirements: [such requirements are then set forth]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(8) Any person . . . who uses tear gas or tear gas weapons except in self-defense or as authorized for training purposes by the department is guilty of a public offense and is punishable by imprisonment in a state prison for 16 months, or two or three years or in a county jail not to exceed one year or by fine not to exceed one thousand dollars ($1,000) or by both such fine and imprisonment, except that if such use is against a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, engaged in the performance of his or her official duties and the person committing the offense knows or reasonably should know that the victim is a peace officer, the offense is punishable by imprisonment in a state prison for 16 months or two or three years or by fine of one thousand dollars ($1,000) or by both such fine and imprisonment. . . . ."

Penal Code sections 12400-12458 contain a number of exemptions from the prohibition of section 12403.7. As to peace officers, section 12403 of the Penal Code states:

"Nothing in this chapter shall prohibit any person who is a peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 from purchasing, possessing, transporting, or using any tear gas weapon, if such weapon has been certified as acceptable under Article 5 (commencing with section 12450) of this chapter and if such person has satisfactorily completed a course of instruction

approved by the Commission on Peace Officers Standards and Training in the use of tear gas."

Significantly, there is no similar exemption or specific authorization in the law which permits "custodial officers" to use tear gas weapons except in self defense.

The only provision we discovered from which one might urge that custodial officers may use tear gas and tear gas weapons to suppress a jail riot or an attempted escape is section 12404 of the Penal Code, one of the series of sections under discussion herein. It states:

"Nothing in this chapter authorizes the possession of tear gas or tear gas weapons in any institution described in Section 4574, or within the grounds belonging or adjacent to any such institution, [including any jail or county road camp] except where authorized by the person in charge of such institution." (Emphasis added.)

It might be urged that the emphasized language somehow constitutes an affirmative authorization for anyone, including county custodial officers, to possess and use tear gas weapons in the course of their duties if authorized by the person in charge of the county jail or other institution.

We believe that section 12404 simply requires persons authorized to use tear gas weapons other than in self defense (such as peace officers) to be authorized by the person in charge of the institution to use such weapons within the institution or within the grounds belonging to or adjacent to the institution. This would include the officer in charge of a county department of corrections with respect to the jail or other county detention facility.

Accordingly, since the law contains no exemption for county custodial officers, we conclude that Penal Code section 12403.7, subdivision (a)(8) does prohibit such officers from using tear gas to suppress a jail riot or escape other than in self defense.

4. Section 4030 of the Penal Code

In 1984 Penal Code section 4030 was enacted to limit the strip and body cavity searches of persons arrested for minor offenses. The section is quoted in full in the Appendix. We summarize the subdivisions applicable to question 4.

Subdivision (a) sets forth the legislative findings and purposes of the statute.

Subdivision (b) limits application of the section to persons arrested for misdemeanor or infraction offenses prior to designated court appearances.

Subdivisions (c), (d), and (e) define the kinds of searches to which the section applies including a strip search, a visual body cavity search and a physical body cavity search.

Subdivision (f) prescribes the conditions required to make a strip search or visual body cavity search before a detainee is placed in the general jail population.

Subdivision (g) prescribes when a detainee may be placed in the general jail population.

Subdivision (h) prohibits any physical body cavity search of a detainee without a search warrant.

Subdivision (n) makes conducting or authorizing a search in violation of the section a misdemeanor.

We are asked in question 4 whether Penal Code section 4030 prohibits custodial officers of a county department of corrections from making a strip search or body cavity search of a person held in custody for a misdemeanor offense which does not involve weapons, controlled substances or violence prior to placement of such persons in the general jail population. We shall refer to a person held in custody under the circumstances specified in the question as a "detainee."

Subdivisions (b), (f) and (h) authorize certain of the questioned searches under specified conditions. We shall discuss each in turn.

Subdivision (b) provides with respect to adults that section 4030 "shall apply only to prearraignment detainees arrested for infraction or misdemeanor offenses." With respect to juveniles section 4030 "shall apply only . . . to any minor detained prior to a detention hearing on the grounds that he or she is a person described in section 300, 601 or 602 of the Welfare and Institutions Code alleged to have committed a misdemeanor or infraction offense." Thus section 4030 does not apply to adult detainees after their arraignment or to juvenile detainees after their detention hearing. Subdivision (g) prohibits placing a detainee in the general jail population when he or she "is not able to post bail within a reasonable time not less than three hours." Section 4030 does not prohibit placing a detainee who is not cited and released or released on his own recognizance in the general jail population after a reasonable time (not less than three hours) for posting bail has passed. It is not likely that an adult detainee will be arraigned before being placed in the general jail population but it is possible. Should this occur section 4030 would not prohibit any search of the detainee after his arraignment. Similarly section 4030 would not prohibit any search of a juvenile detainee after his or her detention hearing.

Subdivision (f) prohibits a strip search or body cavity search of a detainee "unless a peace officer has determined there is a reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon on contraband, and a strip search will result in the discovery of the weapon or contraband." Since custodial officers are not peace officers (Pen. Code, §§ 831 831.5) their suspicions would not authorize search of a detainee for weapons or contraband under this exception. However, a peach officer supervising custodial officers in a county detention facility (see subd. (d) of Pen. Code §§ 831 & 831.5) or other peace officer with the requisite "reasonable suspicion" could authorize a strip search of a detainee for weapons or contraband.

Subdivision (b) prohibits any physical body cavity search of a detainee without a search warrant. A magistrate may issue a search warrant for a physical body cavity search or other search (including a strip search or visual body cavity search) if presented with evidence establishing probable cause for the search. Penal Code section 831.5 provides that the duties of custodial officers "may include the service of warrants." Thus a search warrant to search detainees of a county department of corrections may be addressed to and be executed by custodial officers of the department. (See Pen. Code, § 1530.)

We conclude that Penal Code section 4030 prohibits a custodial officer of a county department of corrections from making a strip search or body cavity search of a person held in custody for a misdemeanor offense which does not involve weapons, controlled substances or violence prior to the placement of such person in the general jail population except:

1.  After the person, if an adult, has been arraigned or, if a juvenile, after his or her detention hearing.

2.  A strip search authorized by a peace officer having a reasonable suspicion that the person is concealing a weapon or contraband and that a strip search will result in the discovery of the weapon or contraband.

3.  Pursuant to a search warrant authorizing the officer to make the search.

5.  <u>Section 830.5 of the Penal Code</u>

The fifth and final question presented is whether the chief of a county Department of Corrections can authorize departmental custodial officers to carry firearms under the authority of Penal Code section 830.5, subdivisions (b) and (c).  We conclude that the chief of the department may not grant such authority pursuant to these provisions.

As material to our inquiry, section 830.5 provides as follows:

"The following persons are peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment and for the purpose of carrying out the primary function of their employment or as required under Sections 8597, 8598, and 8617 of the Government Code.  <u>Except as specified in this section, these peace officers may carry firearms only if authorized and under those terms and conditions specified by their employing agency</u>:

"(a) A parole officer of the Department of Corrections or the Department of the Youth Authority, probation officer, or deputy probation officer, or a board coordinating parole agent employed by the Youthful Offender Parole Board. . . .

"(b) <u>A correctional officer employed by the Department of Corrections</u> or any employee of the Department of the Youth Authority having custody of wards or any employee of the Department of Corrections designated by the Director of Corrections or any medical technical assistant series employee designated by the Director of Corrections and employed by the State Department of Mental Health to work in the California Medical Facility or employee of the Board of Prison Terms designated by the Secretary of the Youth and Adult Correctional Agency or employee of the Department of the Youth Authority designated by the Director of the Youth Authority or any superintendent, supervisor, or employee having custodial responsibilities in an institution operated by a probation department, or any transportation officer of a probation department.

"(c)  The following persons may carry a firearm while not on duty:  a parole officer of the Department of Corrections or the Department of Youth Authority, <u>a correctional officer employed by the Department of Corrections</u> or any employee of the Department of the Youth Authority having custody of wards or any employee of the Department of Corrections designated by the Director of Corrections. . . ."

It has been suggested that "the Department of Corrections" as used in section 830.5 encompasses a county Department of Corrections established pursuant to section 23013 of the Government Code.

The suggestion is answered in *People* v. *Garcia, supra,* 178 Cal.App.3d 887, 894, wherein the court concluded that a battery upon a county department of corrections custodial officer was a violation of section 243.1 of the Penal Code. The court stated:

"The elements of section 243.1 are: (1) a battery; (2) committed against the person of a custodial officer as defined in section 831; (3) where the person committing the offense knows or reasonably should know such victim is a custodial officer engaged in the performance of his duties; and (4) such custodial officer is engaged in the performance of his duties. (1b) Defendants contend Officer Stoltz was not a custodial officer within the meaning of section 831.

"Under section 831, a custodial officer is (1) a public officer, not a peace officer; (2) employed by a law enforcement agency of a city or county; (3) who has the authority and responsibility for maintaining custody of prisoners and performing tasks related to the operation of a local detention facility used for the detention of persons usually pending arraignment or upon court order either for their own safekeeping or the specific purpose of serving a sentence. We address each element in turn.

"Section 830 et seq. specify the duties and functions of `peace officers' and specify those persons who have that status. Correctional, parole, and probation officers of the Department of Corrections, the Department of the Youth Authority, and the Youthful Offender Parole Board are deemed `peace officers.' Transportation officers and employees having custodial responsibilities in an institution operated by a probation department are also deemed peace officers. (§ 830.5.) However, these code sections do not specify county custodial officers as `peace officers.' Section 830 states: `. . . [N]o person other than those designated in this chapter is a peace officer.' Thus, Stoltz does not come within the definition of `peace officer.'" (Emphasis added.)

In short, in holding that Stoltz, a county custodial officer, was not a "peace officer" within the meaning of section 830.5 of the Penal Code but a section 831 "custodial officer", the court construed the Department of Corrections as used in section 830.5 to mean the State Department of Corrections. We follow the *Garcia* case in concluding that the Department of Corrections referred to in Penal Code section 830.5 means the Department of Corrections of the State of California and does not include a county department of corrections created pursuant to Government Code section 23013.

This conclusion is further supported by (1) the use in section 830.5 of the definite article "the" in referring to the Department of Corrections; (2) the fact that the Department of Corrections as used therein is set forth as a proper noun, indicating again a particular department (i.e., the State Department; and (3) the fact that until its amendment in 1980 (compare Stats. 1980, ch. 1340 with Stats. 1978, ch. 642) section 830.5 specifically used the terminology "the State Department of Corrections" in subdivision (a) the lead paragraph, in referring to that Department.

Therefore, in answer to the final question presented, we conclude that section 830.5 does not empower the officer in charge of a county Department of Corrections to authorize his or her custodial officers to carry a firearm.

§ 4030 [Strip searches]

(a)  The Legislature finds and declares that law enforcement policies and practices for conducting strip or body cavity searches of detained persons vary widely throughout California.  Consequently, some people have been arbitrarily subjected to unnecessary strip and body cavity searches after arrests for minor misdemeanor and infraction offenses.  Some present search practices violate state and federal constitutional rights to privacy and freedom from unreasonable searches and seizures.

It is the intent of the Legislature in enacting this section to protect the state and federal constitutional rights of the people of California by establishing a statewide policy strictly limiting strip and body cavity searches.

(b)  The provisions of this section shall apply only to prearraignment detainees arrested for infraction or misdemeanor offenses and to any minor detained prior to a detention hearing on the grounds that he or she is a person described in Section 300, 601, or 602 of the Welfare and Institutions Code alleged to have committed a misdemeanor or infraction offense.  The provisions of this section shall not apply to any person in the custody of the Director of the Department of Corrections or the Director of the Youth Authority.

(c)  As used in this section, "strip search" means a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person.

(d)  As used in this section.

(1)  "Body cavity" only means the stomach or rectal cavity of a person, and vagina of a female person.

(2)  "Visual body cavity search" means visual inspection of a body cavity.

(3) "Physical body cavity search" means physical intrusion into a body cavity for the purpose of discovering any object concealed in the body cavity.

(e)  Notwithstanding any other provision of law, including Section 40304.5 of the Vehicle Code, when a person is arrested and taken into custody, that person may be subjected to patdown searches, metal detector searches, and thorough clothing searches in order to discover and retrieve concealed weapons and contraband substances prior to being placed in a booking cell.

(f)  No person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances or violence nor any minor detained prior to a detention hearing on the grounds that he or she is a person described in Section 300, 601 or 602 of the Welfare and Institutions Code, except for those minors alleged to have committed felonies or offenses involving weapons, controlled substances or violence, shall be subjected to a strip search or visual body cavity search prior to placement in the general jail population, unless a peace officer has determined there is reasonable suspicion based on specific and articulable facts

to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband. No strip search or visual body cavity search or both may be conducted without the prior written authorization of the supervising officer on duty. The authorization shall include the specific and articulable facts and circumstances upon which the reasonable suspicion determination was made by the supervisor.

(g) (1) Except pursuant to the provisions of paragraph (2), no person arrested and held in custody on a misdemeanor or infraction offense not involving weapons, controlled substances or violence, shall be confined in the general jail population unless all of the following are true:

(i) The person is not cited and released.

(ii) The person is not released on his or her own recognizance pursuant to Article 9 (commencing with Section 1318) of Chapter 1 of Title 10 of Part 2.

(iii) The person is not able to post bail within a reasonable time not less than three hours.

(2) No person may be housed in the general jail population prior to release pursuant to the provisions of paragraph (1) unless a documented emergency exists and there is no reasonable alternative to such placement. Such person shall be placed in the general population only upon prior written authorization documenting the specific facts and circumstances of the emergency. The written authorization shall be signed by the uniformed supervisor of the facility or by a uniformed watch commander. Any person confined in the general jail population pursuant to paragraph (1) shall retain all rights to release on citation, his or her own recognizance, or bail which were preempted as a consequence of the emergency.

(h) No person arrested on a misdemeanor or infraction offense, nor any minor described in subdivision (b) shall be subjected to a physical body cavity search except under the authority of a search warrant issued by a magistrate specifically authorizing the physical body cavity search.

(i) A copy of the prior written authorization required by subdivisions (f) and (g) and the search warrant required by subdivision (h) shall be placed in the agency's records and made available, on request, to the person searched or his or her authorized representative. With regard to any strip, visual or body search, the time, date and place of the search, the name and sex of the person conducting the search and a statement of the results of the search, including a list of any items removed from the person searched, shall be recorded in the agency's records and made available upon request, to the person searched or his or her authorized representative.

(j) Persons conducting a strip search or a visual body cavity search shall not touch the breasts, buttocks, or genitalia of the person being searched.

(k) A physical body cavity search shall be conducted under sanitary conditions, and only by a physician, nurse practitioner, registered nurse, licensed vocational nurse or emergency medical technician Level II licensed to practice in this state. Any physician engaged in providing health care to detainees and inmates of the facility may conduct physical body cavity searches.

(l) All persons conducting or otherwise present during a strip search or visual or physical body cavity search shall be of the same sex as the person being searched, except for physicians or licensed medical personnel.

(m) All strip, visual and physical body cavity searches shall be conducted in an area of privacy so that the search cannot be observed by persons not participating in the search. Persons are considered to be participating in the search if their official duties relative to search procedure require them to be present at the time the search is conducted.

(n) A person, who knowingly and willfully authorizes or conducts a strip, visual or physical body cavity search in violation of this section is guilty of a misdemeanor.

(o) Nothing in this section shall be construed as limiting any common law or statutory rights of any person regarding any action for damages or injunctive relief, or as precluding the prosecution under another provision of law of any peace officer or other person who has violated this section.

(p) Any person who suffers damage or harm as a result of a violation of this section may bring a civil action to recover actual damages, or one thousand dollars ($1,000), whichever is greater. In addition, the court may, in its discretion, award punitive damages, equitable relief as it deems necessary and proper, and costs, including reasonable attorney's fees.