Filed 10/8/14  P. v. Medvin CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN MEDVIN,<br><br>        Defendant and Appellant. | A136156<br><br>(Lake County<br>Super. Ct. Nos. CR-904560, CR-913046) |

Defendant Justin Medvin appeals from judgments entered against him in two different cases.  In the first case, he was convicted of resisting a peace officer and assault on a custodial officer (the assault case).  He was given probation, but it was revoked after he stabbed his father to death.  The stabbing gave rise to the second case, in which Medvin pleaded no contest to voluntary manslaughter (the manslaughter case).[1]  After his plea, the trial court permanently revoked probation and sentenced him to a total term of 11 years in prison.  On appeal, Medvin contends that his convictions in the assault case must be reversed because of various instructional errors, and that, as a result, he must be resentenced in the manslaughter case because those convictions were used as aggravating factors.  We reject his claims and affirm the judgments in both cases.

---

[1] The assault case was case no. CR-904560; the manslaughter case was case no. CR-913046.

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Medvin was incarcerated in the Lake County jail for offenses that are not at issue in this appeal. He was housed in pod G, a unit for "mental health" and "protective custody inmates." Pod G was divided into two tiers, and Medvin, who was classified as a mental health inmate, was assigned to the lower tier. Upper-tier inmates were permitted to go to the lower tier to access a common area, but lower-tier inmates like Medvin were not permitted to go to the upper tier.

On March 30, 2005, Terrie Flynn, a correctional aide at the jail, was stationed in a control room from which she could observe pod G. She saw Medvin go up the stairs to the upper tier and "crouch[] down" by the cells to talk to other inmates. Flynn knew that Medvin was not permitted on the upper tier, and she told him over a speaker to return to the lower tier. She testified that he looked at her but did not obey her command. She then called Officer Russell Wright, who was stationed in an office on the lower tier, and told him that Medvin was upstairs and ignoring her orders.

Officer Wright, who was in uniform, testified that he walked to the stairs leading to the upper tier and saw Medvin "hunkered down at the base of [the] door" to one of the cells. Officer Wright ordered Medvin to come downstairs. He then went to the upper tier and observed Medvin trying to push papers under the cell door. After Medvin ignored additional orders to stop and go downstairs, Officer Wright approached to "[w]ithin arm's distance" of him. The officer told Medvin to give the papers to him, and Medvin refused. Officer Wright testified that he "grab[bed]" the papers and again ordered Medvin to go downstairs. Medvin loudly responded that he would not go without his things. It was later discovered that Medvin "had several drawings, envelopes, a page of the inside journal newspaper, and an open pack of chili ramen in his left hand."

Officer Wright testified that even though he tried to calm Medvin, Medvin got "very loud" and was "cursing, swearing, tensed up, making fists, kind of took almost a fighting stance." Officer Wright claimed he backed off and said, "Are you going to fight

2

me over this contraband?"  Medvin responded by "kind of lung[ing] at" him.  The officer then dropped the items and attempted to put Medvin in a control hold, but Medvin was "kind of slick [and] sweaty," and Officer Wright was only able to grab Medvin's left hand.  Officer Wright testified that he tried to direct Medvin down the stairs, but Medvin grabbed the railing with his other hand and resisted.

According to Officer Wright, Medvin suddenly "went limp" and "slipped right out of [his] grasp" to the ground, facing away from the officer.  Medvin then stood up and, as he did so, "swung around" and intentionally punched Officer Wright in the face.  Flynn testified that she saw Medvin swing at Officer Wright and the officer grab or wipe his face, but she did not actually see Medvin make contact.

Officer Wright testified that the two men then began wrestling.  He grabbed Medvin's elbows from behind and "pushed him up again[st] the nearest wall."  Medvin was "still struggling" and "[h]is whole body was twisting . . . like a worm."  Once Officer Wright had control of Medvin, he began talking to him, and Medvin eventually relaxed.

Meanwhile, Flynn, who witnessed most of the fight, had called for backup.  Two other officers, who were also in uniform, reached the upper tier and helped Officer Wright handcuff Medvin.  Medvin "bec[a]me more agitated" when the other officers arrived, and he struggled as they handcuffed him and carried him down the stairs.  When they reached the lower tier, Medvin "really started fighting and kicking and trying to shake everybody off," and a fourth officer helped subdue him and put him in a safety cell.

Officer Wright testified that Medvin's punch split his lip, and he was seen by a nurse, but no treatment was necessary.  One of the first two officers to respond testified that Officer Wright showed him his bloody lip, but the other one did not see any such injury, and no photographs were taken of it.

Medvin told a different story.  He testified that he had gone to the upper tier to trade some of his drawings for ramen.  He claimed that when Officer Wright asked to see his papers, he voluntarily handed them over.  He testified that he then asked for the papers back and extended his hand, at which point Officer Wright "grabbed [him] by

3

[his] arm [and] started spinning [him] around." He denied ever taking "a fighting stance" or "lung[ing]" toward the officer.

Although Medvin acknowledged that he grabbed the stairs' railing "because [he] was scared to fall down," he denied ever going "limp." He testified that as he tried to comply with Officer Wright's request to come away from the stairs, Officer Wright pulled his arm and then pushed him into the wall. Medvin denied ever "resist[ing Officer Wright] with force and violence." He specifically denied punching the officer, although he said it was possible that he might have unintentionally hit the officer's face with his hand as he was being pulled away from the stairs.

As a result of the altercation, Medvin was charged with a felony count of resisting an executive officer and a felony count of battery against a custodial officer.[2] After a trial held in March 2007, the jury found him not guilty of the charged offenses, but it found him guilty of two lesser included offenses: resisting a peace officer, a misdemeanor, and assault against a custodial officer, a felony.[3] The trial court suspended imposition of the sentence and placed him on probation for three years.

Less than a month after Medvin received probation, he stabbed his father to death with a sword. He was taken into custody, and the trial court summarily revoked probation. Over four years later, he pleaded no contest to voluntary manslaughter in connection with his father's death and admitted to violating probation in the assault case.[4] The court sentenced him to a term of 11 years in state prison in the manslaughter case and to terms of two years for the felony conviction and 180 days for the misdemeanor

---

[2] The first count was alleged under Penal Code section 69, and the second count was alleged under Penal Code section 243.1. Medvin was not charged with any offenses against the other officers. All further statutory references are to the Penal Code.

[3] The misdemeanor conviction was under section 148, subdivision (a)(1), and the felony conviction was under section 241.1.

[4] The plea was to voluntary manslaughter under section 192, subdivision (a).

conviction in the assault case, to be served concurrently to the 11-year term. Medvin appealed.[5]

## II.
### DISCUSSION

A. *The Trial Court Properly Instructed the Jury on the Crime of Resisting a Peace Officer as a Lesser Included Offense of Resisting an Executive Officer.*

Medvin argues that the trial court erred by instructing the jury on the crime of resisting a peace officer under section 148, subdivision (a)(1) (section 148(a)(1))—the offense of which he was convicted—as a lesser included offense of resisting an executive officer under section 69. He claims that section 148(a)(1) is not a lesser included offense of section 69 and that, as a result, his conviction under section 148(a)(1) was for an uncharged offense in violation of due process and was barred by the statute of limitations. We are not persuaded.

Trial courts have a sua sponte duty to instruct on a lesser included offense when there is substantial evidence that the defendant is guilty of the lesser offense but not the greater. (*People v. Smith* (2013) 57 Cal.4th 232, 239-240 (*Smith*).) " ' "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that the lesser offense, but not the greater, was committed. [Citations.]' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.) We review de novo whether an instruction on a lesser included offense was required. (*Ibid.*)

" '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' " (*Smith*, *supra*, 57 Cal.4th at p. 240.) *Smith* held that section 148(a)(1) is not a lesser included offense of section 69

---

[5] Although Medvin did not appeal after he was granted probation in 2007, this court granted his motion for constructive filing of a notice of appeal from that order and ordered that this appeal "proceed on the merits" in both the manslaughter and assault cases.

under the statutory-elements test but may be a lesser included offense under the accusatory-pleading test. (*Smith,* at pp. 241-242.) As *Smith* explains, section 69 may be violated in two ways: either by " 'attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law' " or by " 'resisting by force or violence an officer in the performance of his or her duty.' " (*Smith,* at p. 240.) Section 148(a)(1) is not a lesser included offense of the first way of violating section 69 because the first way includes " 'attempts to deter . . . [the] officer's immediate performance of . . . a duty [imposed by law] at some time in the future,' " and a person making such an attempt "does not necessarily willfully resist that officer in the discharge or attempt to discharge his or her duty under section 148(a)(1)." (*Smith,* at pp. 240-241, italics omitted.) A person who violates section 69 in the second way, however, *does* "necessarily violate[] section 148(a)(1)." (*Smith,* at p. 241.) As a result, if the accusatory pleading charges both ways of violating section 69, then section 148(a)(1) is a lesser included offense of the crime charged, and the trial court has a sua sponte duty to instruct on that offense "so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater." (*Smith,* at pp. 242, 244.)

Medvin acknowledges *Smith*, *supra*, 57 Cal.4th 232, and he admits that the information here alleged both ways of violating section 69. He argues that the trial court's instruction on section 148(a)(1) nevertheless permitted him to be convicted of an uncharged offense because it was possible the jury found him guilty on the theory he "delay[ed]," as opposed to "resist[ed]," Officer Wright even though "the information did not allege delaying an officer." (Italics omitted.) But under *Smith*, the court had a sua sponte duty to instruct on section 148(a)(1). The information alleged both ways of violating section 69, and there was substantial evidence that Medvin violated section 148(a)(1) but not section 69 (as the jury in fact found). Nothing in *Smith*—or in any other authority Medvin cites—suggests that a trial court is excused from instructing on section 148(a)(1) or must limit such an instruction if it is possible the jury will find the defendant guilty only under the "delaying" prong. We conclude that under *Smith*, the court was required to give the challenged instruction.

6

Alternatively, Medvin argues that the statute of limitations for the section 148(a)(1) offense had run "when the [trial] court 'charged' [him with it] for the first time, more than a year after the alleged incident, . . . by instructing the jury as to it." The statute of limitations for a lesser included offense when a greater offense is charged is that "applicable to the lesser included offense, regardless of the limitation of time applicable to the greater offense." (§ 805, subd. (b).) As a result, Medvin is correct that the statute of limitations on the section 148(a)(1) offense was one year. (§ 802, subd. (a).)

He is incorrect, however, that the statute of limitations started running when the trial court instructed the jury on the section 148(a)(1) offense. Under section 804, the statute of limitations begins to run on a number of events, including when "[a]n . . . information is filed" or when "[a] complaint is filed charging a misdemeanor or infraction" or "[t]he defendant is arraigned on a complaint that charges the defendant with a felony." (§ 804, subds. (a)-(c).) It is true that the information here was filed on May 25, 2006, more than a year after the jail incident occurred. But a complaint that also charged Medvin with violating section 69 in both ways (and, as a result, necessarily charged him with violating section 148(a)(1)) was filed in April 2005, and on May 16, 2005, he waived arraignment on it. We conclude that Medvin was charged with an offense under section 148(a)(1) within the one-year statute of limitations.

### B. Any Error in the Trial Court's Omission of Instructions on Other Lesser Included Offenses of Battery Against a Custodial Officer Was Harmless.

Medvin next claims that the trial court erred by not instructing on two other lesser included offenses of the battery charge, simple battery and simple assault. We conclude that any error was harmless.

As discussed above, a trial court has a duty to sua sponte instruct on a lesser included offense if there is substantial evidence that the defendant is guilty of it but not the greater offense. (*Smith*, *supra*, 57 Cal.4th at pp. 239-240.) The court has no duty, however, to instruct on a lesser included offense if that offense is barred by the statute of

7

limitations. (*Cowan v. Superior Court* (1996) 14 Cal.4th 367, 376.) Again, our review is de novo. (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 584.)

Simple battery and simple assault are both lesser included offenses of battery against a custodial officer under section 243.1, as the Attorney General essentially concedes. One of the elements of section 243.1 is battery, with the additional requirements that the battery be committed against a custodial officer engaged in the performance of his or her duties whom the defendant knows or reasonably should know is such. (*People v. Garcia* (1986) 178 Cal.App.3d 887, 894; see § 243.1.) Assault, in turn, is an element of battery. (*People v. Colantuono* (1994) 7 Cal.4th 206, 216-217.) Therefore, it is not possible to commit battery against a custodial officer under section 243.1 without also committing simple battery and simple assault.

Medvin raises the possibility that the statute of limitations had run on simple battery and simple assault, and the Attorney General so argues. We disagree, however, for the same reason we already concluded that the statute of limitations did not run on the section 148(a)(1) offense as a lesser included offense of section 69. The April 2005 complaint on which Medvin waived arraignment also charged him under section 243.1. As a result, the one-year statute of limitations on simple battery and simple assault was met because those crimes were necessarily charged in the complaint as well, and the statute of limitations did not excuse the trial court from instructing on simple battery and simple assault.[6]

We need not consider whether a sua sponte duty existed to instruct on simple battery or simple assault, however, because we conclude that any error in failing to instruct on those offenses was harmless. As mentioned above, the distinction between an offense under section 243.1 and both simple battery and simple assault is that the former offense must be committed against a custodial officer engaged in the performance of his or her duties whom the defendant knows or reasonably should know is such an officer. It

_____

[6] In light of this conclusion, we need not consider Medvin's alternative argument that his trial attorney rendered ineffective assistance of counsel by not waiving the statute of limitations and requesting instructions on simple battery and simple assault.

is undisputed Medvin knew Officer Wright was a custodial officer, but Medvin claims that there was "room for doubt" whether the officer "was 'engaged in the performance of his duties' . . . because he was 'using unreasonable or excessive force.' " The verdicts, however, conclusively establish that Officer Wright did *not* use excessive or unreasonable force. The jury was instructed under CALCRIM No. 2671 that it had to find Medvin not guilty of all greater and lesser included offenses on which it was instructed unless the People proved beyond a reasonable doubt that Officer Wright "was lawfully performing his duties as a custodial officer." The instruction specifically provided that "[a] custodial officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties." As a result, the jury must have found that Officer Wright did not use excessive or unreasonable force in order to find Medvin guilty. (See *People v. Jackson* (2014) 58 Cal.4th 724, 767 [juries presumed to follow instructions given].) We conclude that it is not reasonably probable the jury would have found Medvin guilty of only simple battery or simple assault if it had been instructed on either of those offenses. (*People v. Beltran* (2013) 56 Cal.4th 935, 955; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

   C. *Medvin's Claim that the Trial Court Incorrectly Defined "Assault" Fails.*

   Medvin claims that the trial court incorrectly defined "assault" in its instruction on the lesser included offense of assault against a custodial officer of which he was convicted. We conclude that the claim was waived because Medvin's trial counsel agreed to the instruction as given. We further conclude that trial counsel was not ineffective for having done so.

   The jury was instructed under CALCRIM No. 901 on the elements of assault against a custodial officer. Two of the elements are that "[t]he defendant did an act that by its nature *would* directly and probably result in the application of force to a person" and that "[w]hen the defendant acted, [he] was aware of facts that would lead a reasonable person to realize that [his] act by its nature *would* directly and probably result in the application of force to someone." (CALCRIM No. 901, italics added.) Before the instruction was given, Medvin's trial attorney raised a concern that the phrase " 'did an

act [that] by its nature would directly and probably result in the application of force to a person' " was "not really in plain enough English" and was "hard to really comprehend." The trial court suggested changing the word "would" to "could" in both elements because " '[w]ould' almost sounds like a battery," and both parties agreed to the change. When the court read the instruction to the jury, it changed the "would" to "could" in the first element (although it inadvertently did not make the change when reading the other element).

The Attorney General argues that the doctrine of invited error forecloses this claim. We agree. "The doctrine of invited error bars a defendant from challenging a jury instruction given by the trial court when the defendant has requested the instruction based on a ' " ' "conscious and deliberate tactical choice." ' " ' " (*People v. DeHoyos* (2013) 57 Cal.4th 79, 138.) Medvin's trial attorney apparently was concerned that CALCRIM No. 901 did not clearly express the distinction between battery and assault, in which case the jury may not have believed there was a real difference between convicting Medvin of the lesser included offense of assault against a custodial officer and convicting him of the charged offense of battery against a custodial officer. Given that Medvin's attorney raised the issue and specifically agreed to the revision the trial court proposed in response, we conclude that Medvin invited any error in the instruction as given.

Medvin argues that, even if he waived this claim, he is entitled to relief because his trial attorney rendered ineffective assistance of counsel by acquiescing to the revised instruction. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient . . . [because] the representation fell below an objective standard of reasonableness under prevailing norms" and that the deficient performance was prejudicial because "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93.) In reviewing such a claim, we "defer[] to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) " ' "Tactical errors are generally not deemed reversible, and counsel's

10

decisionmaking must be evaluated in the context of the available facts." ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)  As a result, reversal on ineffective-assistance grounds is warranted in a direct appeal only if "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation."  (*Mai*, at p. 1009.)

We conclude that the record suggests a possible rational tactical purpose for agreeing to the revised instruction.  As we discussed above, it appears that Medvin's trial attorney was concerned that the jury would not understand the distinction between battery and assault.  Although we agree with Medvin that the change from "would" to "could" lowered the prosecution's burden of proof on the assault charge, his attorney may have rationally believed that the change would increase Medvin's chance of being convicted of the lesser offense instead of the greater and rationally preferred that to a scenario in which the jury saw no meaningful distinction between the battery and assault offenses and was more likely to convict of the greater offense.  Accordingly, we conclude that Medvin is not entitled to relief on the basis of ineffective assistance of counsel.

>    D.    *The Trial Court Had No Sua Sponte Duty to Instruct the Jury on Self-Defense.*

Medvin argues that the trial court erred by failing to instruct the jury that to find him guilty of both assault on a custodial officer and resisting a peace officer it had to find he had not acted in self-defense.  We disagree.

CALCRIM No. 901, the instruction applicable to assault on a custodial officer, includes an optional seventh element that "[t]he defendant did not act [in self-defense or in defense of someone else]."  (CALCRIM No. 901.)  The bench notes direct, "If there is sufficient evidence of self-defense or defense of another, the court has a sua sponte duty to instruct on the defense.  Give bracketed element 7 and any appropriate defense instructions."  (Bench Notes to CALCRIM No. 901 (2014 ed.) at p. 611.)  During discussion of the jury instructions, the trial court stated, "[A]s to element seven about self-defense or defense of another, I don't think that's applicable.  I didn't hear any

11

evidence." The parties responded with concerns about other aspects of CALCRIM No. 901, but Medvin's trial attorney never addressed the self-defense issue, and the court concluded, "I'll strike number seven because it's not applicable." The parties were given one more chance to raise any objections to the instruction but did not do so. There was no discussion of instructing on self-defense in connection with the offense of resisting a peace officer.

A trial court has a sua sponte duty to instruct on particular defenses " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Barton* (1995) 12 Cal.4th 186, 195, 199.) We review this issue de novo. (See *People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Here, it is clear both that Medvin was not relying on a theory of self-defense and that it was inconsistent with his theory of the case. He testified that he never used force or violence to resist Officer Wright and that, if he did hit the officer, it was accidental. As a result, the court had no duty to instruct on self-defense.

Moreover, any error in the omission of the seventh element in the assault instruction or any other self-defense instruction was harmless because the trial court instructed the jury under CALCRIM No. 2671, applicable to all the offenses on which the jury was instructed, that "[i]f a custodial officer uses unreasonable or excessive force while restraining a person, that person may lawfully use reasonable force to defend himself or herself. [¶] A person being restrained uses reasonable force when he or she, one, uses that degree of force that he or she believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and, two, uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection." Medvin fails to explain how the court's omission of the seventh element in the assault instruction or any other self-defense instruction could possibly be prejudicial in light of this instruction. We conclude that any purported constitutional error was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24) and that it was not reasonably probable that Medvin would have

12

received a more favorable verdict if the jury had been further instructed on self-defense. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

### III.
### DISPOSITION

The judgments are affirmed.

_____
Humes, P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.